[Cite as *State v. Brown*, 2023-Ohio-2885.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220581 |
| | | TRIAL NO. 21CRB-725 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DAQUAN BROWN, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:    Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: August 18, 2023

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Amber H. Daniel*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John D. Hill, Jr.*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} As Lieutenant David Schofield parked to conduct undercover surveillance at an apartment building in lower Price Hill, defendant-appellant Daquan Brown and another man took notice and entered the apartment building. Wearing a mask to cover his face, Mr. Brown exited from the building shortly thereafter and approached Lieutenant Schofield's car with his phone in hand to record the interaction, prompting the officer to summon backup. Mr. Brown eventually removed his mask, allowing the officers to identify him and to confirm an outstanding arrest warrant for a traffic offense. Believing that he resisted arrest, the state subsequently charged Mr. Brown with one count of resisting arrest along with one count of obstructing official business. After the trial court convicted him of resisting arrest (but acquitted him of the other charge), Mr. Brown appealed, challenging the sufficiency and manifest weight of the evidence underpinning his conviction. After reviewing the evidence and record before the trial court, however, we overrule his assignments of error and affirm the trial court's judgment.

I.

{¶2} In January 2021, Lieutenant Schofield parked at an apartment building in an undercover vehicle in lower Price Hill as part of ongoing Cincinnati police surveillance. He soon noticed two men entering the apartment building, one of whom he would later discover was Mr. Brown. Mr. Brown exited from the apartment building wearing a mask and a baseball hat, and he walked up to Lieutenant Schofield's car. Lieutenant Schofield rolled down his window and identified himself as a police officer. Mr. Brown, identifying himself as an apartment superintendent, asked Lieutenant Schofield to leave.

{¶3}    Lieutenant Schofield, concerned about the direction this interaction was taking, communicated his location and the events that occurred to other officers over the radio.  Officer Robert Pitts and other officers patrolling nearby lower Price Hill responded to the call and headed to the apartment to assist.  One of the officers surmised that the man in the mask might be Mr. Brown, based on Lieutenant Schofield's location.  While driving over, Officer Pitts ran Mr. Brown's name through his car terminal, finding his photo and learning of an active warrant out for his arrest for a traffic offense.

{¶4}    When Officer Pitts arrived, Lieutenant Schofield and another officer stood outside the car speaking with Mr. Brown.  A crowd had gathered, as other neighbors migrated out from the apartment building and were conversing or milling about.  None of the officers could identify Mr. Brown at the time due to his mask.  Lieutenant Schofield initially informed Mr. Brown that he was not being detained.  Eventually, however, Mr. Brown pulled down his mask, allowing Officer Pitts to confirm his identity.  Officer Pitts proceeded to detain Mr. Brown, announcing that he was under arrest.

{¶5}    While Officer Pitts attempted to arrest Mr. Brown, he stepped back, and moved his free hand away, exclaiming: "This is what y'all do for a traffic warrant?"  As Mr. Brown continued to move backward, other officers assisted Officer Pitts to detain and subsequently handcuff him.  After a short period of time, Officer Pitts and another officer moved him into the backseat of a police cruiser.

{¶6}    The state ultimately charged Mr. Brown with resisting arrest under R.C. 2921.33 and obstructing official business under R.C. 2921.31.  During the bench trial, much of the argument surrounded whether Mr. Brown used force, intended to resist arrest, or actually interfered with the arrest.  Mr. Brown testified on his own behalf

3

and insisted that he did not resist, explaining that he did not know why he was being arrested since the officers indicated that they would not detain him a few moments earlier.

{¶7} Ultimately, the court found Mr. Brown guilty of resisting arrest but not guilty of obstructing official business. He was sentenced to one year of probation, with 90 days suspended contingent on the completion of 30 hours of community service. Mr. Brown then timely filed this appeal.

II.

{¶8} Because Mr. Brown's first and second assignments of error intertwine, we consider them together for ease of analysis. Mr. Brown maintains that none of the state's evidence at trial sufficiently demonstrated he used "force," "resist[ance]," or "interfere[nce]" under R.C. 2921.33(A). Further, he asserts that his conviction was against the manifest weight of the evidence.

{¶9} In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, and the entire record. *Id.* But we will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶10} When evaluating the sufficiency of the evidence, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295,

82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Additionally, " '[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder.' " (Emphasis sic.) *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 20, quoting *Jenks* at 279. Whether the evidence sufficed to support the conviction presents a legal question that we review de novo. *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶ 9 (1st Dist.).

{¶11} Mr. Brown insists the state did not prove that he resisted arrest under R.C. 2921.33(A), which provides that, "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." As part of the state's burden, it must introduce evidence that it effectuated a lawful arrest in addition to demonstrating that the defendant resisted or interfered with the arrest. *State v. Carte*r, 1st Dist. Hamilton No. C-220030, 2022-Ohio-3901, ¶ 14.

{¶12} Here, Mr. Brown acknowledges that the arrest was lawful, but he maintains that the state failed to establish that he resisted. He claims that he did not resist the arrest, professing only confusion as to the purpose of the arrest. And he asserts that the only evidence of him using force came from the officers who testified against him. We find Mr. Brown's arguments inconsistent with the record before us.

{¶13} When reviewing the body-worn camera footage, Mr. Brown can be seen moving away from the officers after they advise him that he is under arrest. Additionally, they told him to "stop resisting" during the arrest, and Officer Pitts testified that he had to use more force than normally needed to position Mr. Brown's

hands for handcuffs. The video footage before the trial court reveals him attempting to pull his arms away from the officers after they announced his arrest. While Mr. Brown claims confusion for the reason for the arrest, he protested to the officers: "This is what y'all do for a traffic warrant?" Such a response strongly suggests that he knew full well why he was being arrested.

{¶14} Moreover, Mr. Brown required two police officers to walk him to the police car because he was not moving forward on his own. While the arrest itself happened rather quickly, within the timespan of a minute, he did not comply with the officers' orders and resisted their arrest. *See Carter*, 1st Dist. Hamilton No. C-220030, 2022-Ohio-3901, at ¶ 17 ("[T]he evidence established that [defendant] repeatedly refused to submit to [officer's] commands * * *. Viewing the evidence in a light most favorable to the prosecution, [defendant] understood the nature of his conduct, but nevertheless proceeded with heedless indifference to the consequences.").

{¶15} And regardless, even if the court relied only on the officers' testimony, "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 52. "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Id*. "When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29. The trial court, after evaluating all the evidence and testimony before it, found Lieutenant Schofield and Officer Pitts' narratives of the arrest credible, and believed the officers' testimony over Mr. Brown's

account, which does not erode the integrity of the conviction. We overrule Mr. Brown's first and second assignments of error.

*　　　*　　　*

{¶16}　In light of the foregoing analysis, we overrule Mr. Brown's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.

Please note:

 The court has recorded its own entry on the date of the release of this opinion.